

U.S. Department of Justice

*United States Attorney*
*District of New Jersey*

---

PHILIP R. SELLINGER
*United States Attorney*

ANDREW B. JOHNS
*Assistant United States Attorney*

CAMDEN FEDERAL BUILDING & U.S. COURTHOUSE    (856) 757-5026
401 Market Street, 4th Floor                                  Fax: (856) 968-4917
Post Office Box 2098                                  Direct Dial: (856) 757-5137
Camden NJ  08101

May 26, 2023

**Via CM/ECF**

The Honorable Sharon A. King
United States Magistrate Judge
Mitchell H. Cohen Building & U.S. Courthouse
4th & Cooper Streets
Camden, New Jersey 08101

       Re: *Martino v. United States*, Misc. No. 23-11 (SAK)

Dear Judge King:

      Please accept this letter as the Government's response to plaintiff Nicholas Martino's petition to unseal search warrant materials (Dkt. No. 1), motion for replevin of property (Dkt. No. 2), and motion to remove the motion for replevin to an Article III judge (Dkt. No. 4). For the reasons stated below, the Government asks the Court to deny Martino's petition to unseal, refer the motion for replevin to a District Judge, and accept the Government's opposition to the motion for replevin for future use consistent with the Court's orders concerning the assignment of the motion.

## Background Information and Procedural History

      On August 25, 2022, the Government presented six search warrant applications, a global supporting affidavit, and corresponding proposed search warrants to Your Honor. As is the custom in this District, the applications were docketed under Magistrate Numbers 22-17053 through 22-17058. The search warrants related to multiple ongoing criminal investigations of plaintiff, Nicholas Kyle Martino.[1] These investigations are still ongoing today and Martino has not yet been charged in connection with them.

---

[1] The Government does not believe a full description of the nature of the investigations is necessary to resolve the plaintiff's pending petition and motions. However, if the Court directs that additional information concerning the ongoing investigations be provided, the Government respectfully reserves the right to move to provide such information under seal as not to compromise the ongoing investigations.

The search warrants pertained to two residences, three vehicles, and Martino's person.[2] The global affidavit detailed the Government's investigation of Martino, including the details of victim and witness interviews and information learned from grand jury subpoenas and testimony. Each proposed search warrant contained an Attachment A which described the location or thing to be searched. Additionally, the proposed search warrants contained an identical Attachment B which listed the items to be searched for and seized. Attachment B described, *inter alia*, the crimes that were under investigation and the nature of the items to be searched for and seized.

The applications were granted, and Your Honor signed the proposed search warrants. As is also the custom in this district, the Government moved that the applications, affidavits, and search warrants be sealed due to the ongoing nature of the Government's investigation. The Court granted that motion as well and entered a sealing order covering each application, affidavit, and warrant. That sealing order remains in place today.

The search warrants were executed by the FBI on August 29, 2022.[3] The agents executing the warrants completed inventories of items taken as evidence and returned the warrants to the Court. The defendant has stated that he was not served with complete copies of the search warrants, specifically Attachments A and B. The Government does not believe that to be accurate. However, to settle that issue, the Government will provide Martino with copies of the warrants, along with the attachments under separate cover.

---

[2] The warrants and related documents are still under seal. Thus, the Government is not quoting from those documents in this public filing. If the Court requires copies of the sealed materials be filed in this matter, the Government respectfully reserves the right to move to file those materials under seal in this case so the materials will not be publicly available.

[3] At the time of the execution of the search warrants, Martino was on supervised release. *See* Crim. No. 17-240 (NLH) (hereafter, "Crim. Dkt."). After the execution of the search warrants, the U.S. Probation Office filed a violation petition, alleging that Martino had violated his supervised release by possessing an internet capable mobile phone and not residing at an address approved by the U.S. Probation Officer. Crim. Dkt. No. 86. Martino was arrested and ordered detained based on the alleged violations. Crim. Dkt. No. 88-96. On or about October 20, 2022, the Government provided copies of the returned warrants and inventories to Martino as discovery during the violation proceedings. On March 21, 2023, Martino, after being granted permission to proceed *pro se*, pleaded guilty to the violations. Crim. Dkt. No. 116. On April 17, 2023, Martino was sentenced to 12 months and one day of incarceration for violating the terms of his supervised release. Crim. Dkt. No. 119-120.

Martino has not been charged with a crime in relation to the investigation detailed in the global search warrant affidavit. The Government's investigation into Martino, as well as the review of the evidence gathered under the search warrants in question, remains ongoing.

As of this filing, the Government is preparing to return approximately 51 of the 78 items seized during the execution of the search warrants that are not of evidentiary value in its pending investigation. The remaining items have evidentiary value to the Government's investigation or are still being reviewed by the Government. This latter category includes electronic devices and storage media that are encrypted, which the Government is still trying to decrypt and access.

## Legal Analysis

*Point I: Martino is not entitled to a copy of the sealed search warrant documents.*

Martino's petition to unseal the search warrant applications, global affidavit, and other related papers should be denied. Martino's petition argues that he is entitled to copies of the sealed papers under the First and Fourth Amendments and the common law right of access. Dkt. No. 1-1 at 2-4. None of Martino's legal theories justify the relief he seeks.

The First Amendment gives the public a right to attend criminal trials. *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555 (1980). Since the decision in *Richmond Newspapers*, an "experience and logic" test has developed to determine whether a particular criminal proceeding is open to the public. *Press-Enterprise Co. v. Superior Court*, 478 U.S. 1 (1986) ("*Press-Enterprise II*"). The "two complimentary considerations" of the test are "whether the place and process have historically been open to the press and general public"—the "experience" prong— and "whether public access plays a significant positive role in the functioning of the particular process in question"—the "logic" prong. *Press-Enterprise II*, 478 U.S. at 8.

Since *Press-Enterprise II*, the Third Circuit has extended the First Amendment right of access to proceedings other than a criminal trial. *See, e.g., United States v. Smith,* 776 F.2d 1104 (3d Cir.1985) ("*Smith I*") (bill of particulars supporting an indictment); *United States v. Simone,* 14 F.3d 833 (3d Cir.1994) (post-trial hearings to examine an allegation of juror misconduct); *United States v. Smith,* 787 F.2d 111 (3d Cir.1986) ("*Smith II*") (transcript of sidebar conference during criminal trial).

Grand jury proceedings have generally been kept secret, despite the fact that they are judicial proceedings related to criminal investigations. *Douglas Oil Co. of California v. Petrol Stops Northwest,* 441 U.S. 211, 218 (1979) ("Since the 17th century, grand jury proceedings have been closed to the public, and records of such proceedings have been kept from the public eye."); *United States v. Smith,* 123 F.3d 140, 148 (3d Cir. 1997) ("*Smith III*") ("[G]rand jury proceedings are not subject to a First Amendment right of access under the test of 'experience and logic.'").

Even if a First Amendment right of public access applies to a particular criminal proceeding, it is presumptive, not absolute. *See Globe Newspaper Co. v. Superior Court,* 457 U.S. 596 (1982); *Press–Enterprise Co. v. Superior Court,* 464 U.S. 501 (1984) ("*Press–Enterprise I"* ); *United States v. Antar,* 38 F.3d 1348 (3d Cir.1994) (findings must be made on a case-by-case basis "establishing the existence of a compelling governmental interest, and demonstrating that absent limited restrictions upon the right of access, that other interest would be substantially impaired").

The Third Circuit has not addressed whether there is a First Amendment right of access to search warrant documents. Three circuits, the Fourth, Sixth, and Ninth, have held that there is no First Amendment right of access to search warrant documents. *In re Search of Fair Finance*, 692 F.3d 424 (6th Cir. 2012); *Times Mirror Co. v. United States,* 873 F.2d 1210 (9th Cir. 1989); *Baltimore Sun Co. v. Goetz,* 886 F.2d 60 (4th Cir.1989). Two District Courts in the Third Circuit have addressed this issue, similarly holding that there is no First Amendment right of access to search warrant materials. *United States v. Sealed Search Warrants*, 1999 WL 1455215 (D.N.J. 1999); *In Matter of Search of 1993 Jeep Grand Cherokee,* 1996 WL 768293, (D.Del. 1996). In these cases, the courts found that search warrant proceedings have been historically closed to the public—experience—and that public access would hinder the Government's ability to conduct criminal investigations—and logic.

The Eighth Circuit has taken a different approach, holding that there is a qualified First Amendment right of access to search warrant documents. *In re Search Warrant for Secretarial Area*, 855 F.2d 569 (8th Cir. 1988) (newspaper sought to unseal search warrant documents related to ongoing investigation into alleged bribery in defense industry).  However, the Eighth Circuit noted "we hold that the qualified first amendment right of public access extends to the documents filed in support of search warrants and that the documents may be sealed if the district court specifically finds that sealing is necessary to protect a compelling government interest and that less restrictive alternatives are impracticable." *Id.* at 575. The Government's research has revealed no other circuit that has held there is a First Amendment right to access, whether qualified or not, to search warrant documents.

There is also a common law right of access to judicial records and proceedings. This "general right to inspect and copy public records and documents, including judicial records and documents," which predates the Constitution, was recognized by the Supreme Court in *Nixon v. Warner Communications, Inc.,* 435 U.S. 589 (1978). *See also United States v. Criden,* 648 F.2d 814 (3d Cir. 1981) ("*Criden I"*). This right has been "justified on the ground of the public's right to know, which encompasses public documents generally, and the public's right to open courts, which has particular applicability to judicial records." *United States v.*

4

*Sealed Search Warrants*, 1999 WL 1455215 (D.N.J. 1999) (citing *Criden I*, 648 F.2d at 819).

In *Criden I*, the Third Circuit explained that the public interests identified in *Nixon v. Warner Communications* supporting the common law right of access are similar to the public interests identified under the First Amendment right of access in *Richmond Newspapers*. *Criden I*, 648 F.2d at 820. Therefore, the same policy considerations are applicable in both a First Amendment and common law analysis. However, when determining whether a common law right of access exists to a document or proceeding, a court should use a balancing test and weigh the public's right to view judicial records against the interests of the opposing party. *See, e.g. Criden I*, 648 F.2d at 819-823.

Martino has offered no compelling reason why this Court should break from the Fourth, Sixth, and Ninth Circuits, nor the courts in this District and the District of Delaware that have held there is no First Amendment right of access to search warrant materials. It is beyond dispute that search warrant proceedings have historically been closed proceedings. *See United States v. U.S. Dist. Court,* 407 U.S. 297, 321 (1972) (a "warrant application involves no public or adversary proceedings: it is an ex parte request before a magistrate or judge"); *Franks v. Delaware,* 438 U.S. 154, 169 (1978) (search warrant proceedings are "necessarily ex parte, since the subject of the search cannot be tipped off to the application for a warrant lest he destroy or remove evidence"); *Times Mirror,* 873 F.2d at 1213–14 ("The process of disclosing information to a neutral magistrate to obtain a search warrant, therefore, has always been considered an extension of the criminal investigation itself. It follows that the information disclosed to the magistrate in support of the warrant request is entitled to the same confidentiality accorded other aspects of the criminal investigation."). Additionally, public access to search warrant documents would seriously jeopardize the Government's ability to conduct criminal investigations. Such access would also undermine the secrecy of grand jury proceedings, as search warrant documents routinely contain information that has been learned through a grand jury proceeding or subpoena. Thus, when examining the "experience and logic" of access to search warrant documents, the factors weigh strongly against finding a First Amendment right of access exists.

Furthermore, Martino has not established that the competing interests of public disclosure and secrecy in criminal investigations under the common law balancing test establish his right to access. Unfettered access to the search warrant documents will result in the disclosure of grand jury materials and testimony and expose the Government's investigative methods to the target of an investigation. Further, a line-by-line redaction of grand jury materials or other sensitive information is impractical because even that will pose a danger to the Government's ongoing investigation. Thus, when balancing the competing interests under the common law right of access, the scale leans heavily in the Government's favor and Martino's petition should be denied.

Finally, Martino asserts a Fourth Amendment right of access to the search warrant documents. He cites to several unpublished and nonbinding District Court decisions in support of this position. Dkt. No. 1-1 at 3-4. The Third Circuit has not addressed whether such a Fourth Amendment right of access to sealed search warrant documents exists, but the Seventh Circuit has squarely rejected the argument. *See Matter of EyeCare Physicians of Am.*, 100 F.3d 514, 516-17 (7th Cir. 1996)("The Warrant Clause of the Fourth Amendment circumscribes the issuance of warrants, but does not address access to the affidavits employed to support them.... [N]o provision within the Fourth Amendment grants a fundamental right of access to sealed search warrant affidavits before an indictment."). No other Circuit Court has appeared to address this issue. The Government agrees with the Seventh Circuit's analysis and urges this Court to follow that court's reasoning here and reject Martino's Fourth Amendment based argument.

For the reasons stated above, this Court should deny Martino's petition to unseal the search warrant documents. If this Court grants Martino's petition to unseal, the Government requests that the Court allow the Government to submit proposed redactions to the global affidavit prior to unsealing the documents supporting the warrant. The Court can then review those proposed redactions, modify them, and enter an order unsealing the affidavit that gives the Government a reasonable window of time to appeal. *See In re Search Warrants Issued on Apr. 26, 2004,* 353 F. Supp. 2d 584 (D. Md. 2004) (similar procedure followed).

*Point II: Martino's motion to remove the motion for replevin to an Article III judge should be denied.*

Martino has moved to remove his motion for replevin to an Article III judge. Dkt. No. 4. Martino's argument is founded on the premise that because there is no indictment at this time, the motion for replevin seeks equitable relief, that is, the return of property, which must be heard by a District Judge.

The Government's position is that the motion for replevin, because there is no contemporaneous criminal matter, is a new civil matter in equity and should be referred to a District Judge. *See United States v. Chambers*, 192 F.3d 374, 376 (3d Cir. 1999). The District Judge may then, under the Federal Magistrates Act, 28 U.S.C. § 636, refer the matter back to a Magistrate Judge to, if necessary, conduct an evidentiary hearing, and make a report and recommendation to the District Judge. This same procedure was used in *United States v. Douleh*, 220 F.R.D. 391 (W.D.N.Y. 2003).

For these reasons, the Government requests that Your Honor refer the motion for replevin to a District Judge for disposition.

*Point III: Martino's motion for replevin should be denied.*

Martino has moved for replevin under Fed. R. Crim. P. 41(g). Dkt. No. 2. Martino has demanded that the Government (1) return all the property seized

outside the scope of the warrants; (2) return all property deemed to be of no evidentiary value; (3) permit Martino the opportunity to copy, at his expense, any data the Government retains; and (4) any other relief to which he is entitled. Martino's motion should be denied.

The "government is permitted to seize evidence for use in investigation and trial, but that such property must be returned once criminal proceedings have been concluded, unless it is contraband or subject to forfeiture." *United States v. Chambers*, 192 F.3d 374, 376 (3d Cir. 1999). When a criminal prosecution is still pending, the burden is on the movant to show that he or she is entitled to the property. *United States v. Martinson,* 809 F.2d 1364, 1369 (9th Cir.1987). "Generally, a Rule 41[(g)] motion is properly denied 'if the defendant is not entitled to lawful possession of the seized property, the property is contraband or subject to forfeiture or the government's need for the property as evidence continues.'" *United States v. Van Cauwenberghe,* 934 F.2d 1048, 1061 (9th Cir.1991). The burden only shifts to the Government after criminal proceedings have ended. *United States v. Martinson,* 809 F.2d at 1369.

Additionally, Martino is not entitled to a full-blown evidentiary hearing on his motion. Although Rule 41(g) provides that "[t]he court shall receive evidence on any issue of fact necessary to the decision of the motion," the two-part inquiry described in *Chambers* does not require that "a district court ... necessarily conduct an evidentiary hearing on every Rule 41(g) motion." *Peloro v. U.S.,* 488 F.3d 163, 177 (3d Cir.2007), quoting *United States v. Albinson,* 356 F.3d 278, 281 (3d Cir. 2004). A hearing is required only if needed to determine a "disputed issue of fact necessary to the resolution of the motion." *Id.,* quoting *Albinson,* 356 F.3d at 282. *See also United States v. Chambers,* 192 F.3d at 378.

Martino has not met his burden to show that he is lawfully entitled to the property the Government is not yet returning. Instead, Martino has claimed the right to possess other people's property, engaged in speculation about the nature of the Government's investigation by claiming property was seized outside the scope of the warrants, made irrelevant and unsubstantiated statements about the location of the seized property, and made unsupported claims that certain property taken was privileged, without which specifying which privilege applies. Dkt. No. 2-1 at 2-7. On the other hand, the Government is returning all the items that it has determined are no longer of evidential value.

The items that are being retained by the Government include both physical evidence and digital devices. Several of the digital devices are encrypted, and that encryption has delayed the Government's review of the data contained on those devices. Such a delay is not unreasonable. *United States v. Jarman*, 847 F.3d 259, 267 (5th Cir. 2017) (observing that courts have held that "a delay of several months or even years between the seizure of electronic evidence and the completion of the government's review of it is reasonable." (citation and alterations omitted)); *United States v. Sosa*, 379 F. Supp. 3d 217 (S.D.N.Y. 2019) (a delay of 15 months is not

7

unreasonable); *United States v. Estime,* 2020 WL 6075554 (S.D.N.Y. 2020) (a delay of ten months is not unreasonable when the Government's review of seized electronic evidence is hampered by encryption). Additionally, this Office has been informed by the FBI that copying the devices that remain encrypted is not possible for every item. For those items that can be copied, accessing the encrypted data may take longer, or even be impossible, if the Government no longer has access to the electronic storage devices. Given the technical issues involved in this case, Martino's complaint that the Government has had these items for eight months yet failed to charge him is unreasonable. The Government continues to attempt to access the encrypted devices in furtherance of its investigation into Martino's illegal activities and ordering their return at this time will effectively end the Government's investigation.

For all of the above reasons, Martino's motion to return property should be denied.

Sincerely yours,

PHILIP R. SELLINGER
United States Attorney

By: *[signature]*
ANDREW B. JOHNS
Assistant United States Attorney

cc: Nicholas Martino *(via US mail)*

8