**[ECF Nos. 1, 8, 15]**

THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| **NICHOLAS KYLE MARTINO,** | |
| Petitioner, | |
| v. | Civil No. 23-mc-11 (NLH/SAK) |
| **UNITED STATES OF AMERICA,** | |
| Respondent. | |

**MEMORANDUM OPINION AND ORDER**

Presently before the Court is the Petition to Unseal Search Warrant Materials [ECF No. 1] filed by Petitioner Nicholas Kyle Martino ("Petitioner" or "Martino"). Petitioner seeks an order unsealing the underlying applications and global affidavit in connection with six search warrants issued by this Court in related criminal matters.[1] The Court received the Government's opposition [ECF No. 7] and Petitioner's Reply [ECF No. 9]. The Court also received two motions filed by Petitioner—a motion seeking an order to show cause as to why his petition should not be granted [ECF No. 8] and another for an in-person hearing and oral argument on the petition [ECF No. 15].[2] Neither motion is opposed. The Court exercises its discretion to decide the petition and motions without oral argument. *See* FED. R. CIV. P. 78; L. CIV. R. 78.1. For the reasons to be discussed, the petition is **DENIED**, and Petitioner's remaining motions are **DENIED** as moot.

---

[1] *See* 22-mj-17053; 22-mj-17054; 22-mj-17055; 22-mj-17056; 22-mj-17057; and 22-mj-17058.
[2] The Court also received two letters from Petitioner [ECF Nos. 16, 17] dated January 17, 2024 and February 5, 2024, respectively, advising of a supplemental authority that Petitioner contends warrants granting his petition. However, the particular matter that Petitioner relies upon is neither procedurally nor substantively similar to the instant matter. *See* 2:22-cr-00004-LK (W.D. Wash.). For these reasons, the Court will exclude Petitioner's supplemental arguments from its analysis.

I.      **BACKGROUND**

On August 25, 2022, this Court issued six search warrants to search two residences, three vehicles, and Martino's person, and to seize any property, documents, and things described therein. As part of the search warrant application process, the Government presented the Court with a global supporting affidavit and six search warrant applications. The Court reviewed the affidavit, applications, and warrants, and, satisfied that they met the requirements of FED. R. CRIM. P. 41, authorized the Government to execute the warrants. Detailed within the global affidavit was the Government's investigation of Martino, including the details of victim and witness interviews and information learned from grand jury subpoenas and testimony.

In light of the ongoing nature of the Government's investigation, and upon its application, the Court issued an order sealing each affidavit, application, and search warrant. These materials remain under seal to date.

Federal officials executed the search warrants upon the two residences, three vehicles, and Martino's person on August 29, 2022. The agents executing the warrants completed inventories of the items taken as evidence and presented copies of the warrants to Martino, along with receipts including an inventory of the property taken. The warrants were then returned to the Court.

Martino has not been charged with a crime in relation to the investigation detailed in the Government's global affidavit. However, the Government's investigation of Martino, and review of the evidence gathered pursuant to the search warrants, remains ongoing. The Government states that some items that were seized during the execution of the search warrants are being returned to Martino. The Government claims the remaining items have evidentiary value to its investigation or are still being reviewed. This includes electronic devices and encrypted storage media, which the Government is still trying to decrypt and access.

Martino now seeks an order to unseal the six search warrant applications, global affidavit, and related materials, claiming a right of access under the First Amendment, Fourth Amendment, and the common law.  In its response, the Government disputes the existence of a First or Fourth Amendment right of access to pre-indictment search warrant materials.  Under the common law, the Government argues that the secrecy interests of the ongoing grand jury investigation outweigh any competing interests of public disclosure.  In his reply, Martino reiterates his claims to a right of access to pre-indictment search warrant materials.  He also claims that the Government fails to establish why no less restrictive means, such as redaction, are available.

## II.   DISCUSSION

### A.  First Amendment Right of Access

The public's right to attend criminal trials pursuant to the First Amendment was first established in *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555 (1980).  Since this decision, an "experience and logic" test has developed to determine whether a particular criminal proceeding is open to the public.  As the Supreme Court has explained, "two complementary considerations" must be analyzed in assessing whether a right of access attaches to a particular criminal proceeding.  *Press-Enterprise Co. v. Superior Court* ("*Press-Enterprise II*"), 478 U.S. 1, 8 (1986).  First is the "experience" prong of the test, which asks "whether the place and process have historically been open to the press and general public." *Id.*  Second is the "logic" prong, which asks "whether public access plays a significant role in the functioning of the particular process in question." *Id.*

The Supreme Court has extended the First Amendment right of access to proceedings other than a criminal trial, as well as to documents generated as a part thereof. *See, e.g.*, *Press-Enterprise Co. v. Superior Court* ("*Press-Enterprise I*"), 464 U.S. 501 (1984) (*voir dire* of potential jurors); *Press-Enterprise II*, 478 U.S. 1 (transcripts of a preliminary hearing in a criminal murder trial).

3

The Third Circuit has also extended the application of the First Amendment right of access to other proceedings and documents. *See, e.g.*, *United States v. Smith* ("*Smith I*"), 776 F.2d 1104 (3d Cir. 1985) (bill of particulars supporting an indictment); *United States v. Smith* ("*Smith II*"), 787 F.2d 111 (3d Cir. 1986) (transcript of sidebar conference during criminal trial); *United States v. Simone*, 14 F.3d 833 (3d Cir. 1994) (post-trial hearing to examine an allegation of juror misconduct).

One notable exception in this context is grand jury proceedings, which have historically been kept secret "even though they are judicial proceedings that are closely related to the criminal fact-finding process." *United States v. Sealed Search Warrants*, Nos. 99-1096 to 99-1098, 1999 WL 1455215, at *3 (D.N.J. Sept. 2, 1999) (citations omitted); *see Douglas Oil Co. of Ca. v. Petrol Stops Nw.*, 441 U.S. 211, 218 n.9 (1979) ("Since the 17th century, grand jury proceedings have been closed to the public, and records of such proceedings have been kept from the public eye."); *see also United States v. Smith* ("*Smith III*"), 123 F.3d 140, 148 (3d Cir. 1997) ("[G]rand jury proceedings [are] not subject to any First Amendment right of access.").

Even if a First Amendment right of access attaches to a particular criminal proceeding or document, it is merely presumptive and not absolute. *See Globe Newspaper Co. v. Superior Court*, 457 U.S. 596, 606 (1982); *Press-Enterprise I*, 464 U.S. at 509–10. "Closure may be necessitated by overriding governmental interests, and when it is narrowly tailored to serve those interests." *Sealed Search Warrants*, 1999 WL 1455215, at *4 (citations omitted); *see Globe Newspaper Co.*, 457 U.S. at 607 ("[I]n order to inhibit the disclosure of sensitive information, it must be shown that the denial is necessitated by a compelling governmental interest, and is narrowly tailored to serve that interest."); *see also United States v. Antar*, 38 F.3d 1348, 1359 (3d Cir. 1994) (citing *Press-Enterprise II*, 478 U.S. at 15) (requiring particularized findings on a case-by-case basis).

The Third Circuit has not addressed whether there exists a First Amendment right of access to pre-indictment search warrant documents. The Fourth, Sixth, and Ninth Circuits have held that there is no right of access to such documents while a pre-indictment investigation is under way.[3] At least two district courts within the Third Circuit have addressed the issue and similarly held that there is no right of access during the pre-indictment stage. *See In re Search of 1993 Jeep Grand Cherokee*, Nos. 96-91M to 96-93M, 1996 WL 768293, at *9 (D. Del. Oct. 11, 1996) (finding that "there is no constitutional right of access to pre-indictment warrants and supporting documentation based upon the First Amendment"); *see also Sealed Search Warrants*, 1999 WL 1455215, at *5. The rationale underlying these decisions is that search warrant proceedings have historically been closed to the public and that public access would hinder, rather than facilitate, the warrant process and the government's ability to conduct criminal investigations.

In support of his petition, Martino cites to *In re Search Warrant for Secretarial Area Outside Office of Gunn*—the only appeals court that has held there is a First Amendment right of access to search warrant materials during an ongoing investigation. 855 F.2d 569 (8th Cir. 1988). The Court finds, however, as others have, this decision to be unpersuasive. *See, e.g.*, *In re Search of Fair Fin.*, 692 F.3d at 433 n.3; *Sealed Search Warrants*, 1999 WL 1455215, at *4–5 (detailing the court's analysis and declining to adopt the holding therein). More critically, the decision is not binding upon this Court. Given the absence of any applicable Third Circuit authority, the Court will look to the decision in *Sealed Search Warrants* for guidance.

---

[3] *See Baltimore Sun Co. v. Goetz*, 886 F.2d 60, 62, 64–65 (4th Cir. 1989) (holding, "in the interval between execution of the warrants and indictment," there is no First Amendment right of access "to an affidavit for a search warrant"); *Times Mirror Co. v. United States*, 873 F.2d 1210, 1211 (9th Cir. 1989) (holding "members of the public have no right of access to search warrant materials while a pre-indictment investigation is under way"); *In re Search of Fair Fin.*, 692 F.3d 424, 433 (6th Cir. 2012) (concluding "that there is no First Amendment right of access to documents filed in search warrant proceedings" or even "to docket sheets of search warrant proceedings").

In *Sealed Search Warrants*, the court held that, "based upon experience and logic, there is no First Amendment right [of] access to the affidavits and inventories submitted in connection with the [subject] search warrants" at issue. *Id.* at *5. The court specifically found that "[i]t cannot be disputed that the process by which a search warrant is obtained has historically been a closed one." *Id.* (citing *United States v. U.S. Dist. Ct.*, 407 U.S. 297, 321 (1972); *Franks v. Delaware*, 438 U.S. 154, 169 (1978); *Times Mirror*, 873 F.2d at 1213–14). The Court agrees with and adopts the holding in *Sealed Search Warrants*. Accordingly, the Court finds that Petitioner's claimed First Amendment right of access fails as a matter of law.[4]

### B. Fourth Amendment Right of Access

The parties correctly note that there is no Third Circuit precedent addressing or supporting Petitioner's claimed right of access under the Fourth Amendment. Petitioner relies primarily upon unpublished and nonbinding authorities in support of his argument that the Fourth Amendment provides a right of access to pre-indictment search warrant documents. The Government notes that the Seventh Circuit is the only appeals court that has addressed whether such a right exists, and further notes that it squarely rejected the claim. *See In re EyeCare Physicians of Am.*, 100 F.3d 514, 517 (7th Cir. 1996) (emphasis in original) ("[Petitioner's] argument does not rest upon the terms of the Fourth Amendment, for the text of that Amendment does not address, even implicitly, the problem of lack of access to sealed search warrant affidavits. The Warrant Clause of the Fourth Amendment circumscribes the *issuance* of warrants, but does not address access to the affidavits

---

[4] This notwithstanding, as detailed *infra*, the common-law right of access analysis shares identical interests and policy considerations as a First Amendment right of access analysis. The substantive difference between the two is that the former utilizes a balancing test to weigh competing interests, whereas the latter is a two-prong test that can be overridden by compelling governmental interests. As such, the Court finds that, even if there was such a right, Petitioner's claimed First Amendment right of access still fails because neither experience nor logic provide a basis for it, or alternatively, because compelling governmental interests override Petitioner's claimed right. *See infra* note 6.

6

employed to support them."). Although the Seventh Circuit's decision is not binding on this Court, its sharp rejection of the claimed right is certainly persuasive. At the same time, the Court can discern no obvious rule in the absence of any controlling or authoritative case law specifically holding otherwise. Thus, in the same vein as the Seventh Circuit's holding, the Court finds that there is no Fourth Amendment right of access to pre-indictment search warrant materials based upon a plain reading of the text of the Amendment.[5] Therefore, the Court finds that Petitioner's claimed Fourth Amendment right of access also fails as a matter of law.

### C. Common-Law Right of Access

The common law provides the public with a right of access to judicial records and proceedings. "This 'general right to inspect and copy public records and documents, including judicial records and documents,' which predates the Constitution, was recognized by the Supreme Court in *Nixon v. Warner Communications, Inc.*, 435 U.S. 589 (1978)." *Sealed Search Warrants*, 1999 WL 1455215, at *4 (citing *United States v. Criden* ("*Criden I*"), 648 F.2d 814 (3d Cir. 1981)). The common-law right of access "has been justified on the ground of the public's right to know, which encompasses public documents generally, and the public's right to open courts, which has particular applicability to judicial records." *Criden I*, 648 F.2d at 819.

The Third Circuit explained in *Criden I* that the interests identified by the Supreme Court in *Warner Communications* as "supporting the right to access . . . are identical to the interests" identified in *Richmond Newspapers, Inc.*, 448 U.S. 555. *Id.* at 820 (quoting *Warner Commc'ns*, 435 U.S. at 598). These interests are "the citizen's desire to keep a watchful eye on the workings of public agencies" and publication of "information concerning the operations of government."

---

[5] The Fourth Amendment provides: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

7

*See id.* Therefore, the same policy considerations are at work in both a First Amendment and a common-law right of access analysis. Although the interests are identical, rather than applying the "compelling governmental interest" standard used under the First Amendment, a court must balance the strength of the common law right to view judicial records against the interests pressed by the opposing party. *See id.*

The Court finds that public access to the global affidavit, warrant applications, and related documents would undermine the historically protected institution of the grand jury. Similar to the global affidavit at issue here, the affidavits at issue in *Sealed Search Warrants* were "based in part upon [the government's] review of testimony and documents that were presented to the grand jury." 1999 WL 1455215, at *6. The government represented that the information contained in the affidavits also related to an ongoing grand jury investigation. *See id.* The court found that any threat to the grand jury process would not only justify denial of petitioners' claimed common-law right of access, *see id.* at *8, but also their claimed First Amendment right of access. *See id.* at *6 (citing *Douglas Oil*, 441 U.S. at 218) ("[T]he proper functioning of our grand jury system depends upon the secrecy of grand jury proceedings.").

Here, the Government has represented that the information contained in the global affidavit includes details of victim and witness interviews, as well as information learned from grand jury subpoenas and testimony. The Government has also represented its investigation into Petitioner, and its review of the evidence gathered under the search warrants, is ongoing. The Government contends that public disclosure of search warrant materials would seriously jeopardize its ability to conduct criminal investigations. It would also expose the Government's investigative methods to the target of an investigation—a point which the Court does not take lightly. As a sister court recently observed, "the concerns of violating the secrecy of grand jury proceedings are heightened

8

when the [subject] seeking disclosure is involved in, or a potential target of, the activity under investigation." *In re Search Warrants Issued Nov. 30, 2022*, No. 22-mj-1897, 2023 WL 5593959, at *3 (E.D. Pa. Aug. 29, 2023). For these reasons, the Court shares many of the concerns that were noted by the court in *Sealed Search Warrants* as to how public disclosure would undermine the grand jury process. 1999 WL 1455215, at *6. These included:

> Names of cooperating witnesses would be revealed, and they could be subject to intimidation, tampering, and public inquiries. Other evidence could be destroyed or modified . . . . In addition, public access would discourage unfettered testimony from witnesses who know their identities and statements will be made public through the press. . . . [P]ublic disclosure further runs the risk that anyone suspected of criminal activity might tailor their actions and accounts of events to take advantage of perceived strengths or weaknesses in the Government's investigation. These threats to the effective operation of an ongoing criminal investigation are the same reasons that grand jury proceedings have traditionally been kept secret.

*Id.* (internal quotations and citations omitted); *see In re Search of 1993 Jeep Grand Cherokee*, 1996 WL 768293, at *7 ("In sum, the danger in providing the public relevant, correct information could hamper the government's investigation.").

Additionally, the Court finds that there is little, if any, public interest served by disclosure. The global affidavit is permitted to be based upon hearsay, which is normally not admitted at criminal trials, except under judicially monitored circumstances to assure its reliability. *See Sealed Search Warrants*, 1999 WL 1455215, at *7. "The information in the affidavit only supports a finding of probable cause for these particular search warrants; it does not comprise the entirety of the government's evidence, nor does it clearly indicate the scope and focus of the investigation." *Id.* Further, "evidence in a criminal investigation is continually developing, and evidence that may at first seem material may prove to be inconsequential; conversely, evidence that initially seems irrelevant may prove to be critical. Thus, there is no public good served in disclosing a distorted, inaccurate, or incomplete picture of the basis for the criminal investigation." *Id.*; *see In re Search*

9

*of 1993 Jeep Grand Cherokee*, 1996 WL 768293, at *7 (concluding that "the danger in providing irrelevant or unreliable information is that the public would not be objectively educated regarding the search warrant process").

On balance, the Court finds the competing interests under a common-law analysis justify denying the petition.[6]  The historical tradition of secrecy surrounding search warrant applications and the grand jury system, the sensitive nature of the information contained in the global affidavit, the procedural posture of the Government's investigation, and Petitioner's potential status as a target of said investigation, collectively and significantly diminish the common-law right of access to judicial records.  Therefore, at this pre-indictment stage, the Court finds that the balance of the competing interests weighs heavily in favor of maintaining the search warrant materials under seal.  In addition, the Court finds that no less restrictive alternative is available.  The Court, therefore, will deny Petitioner's request to compel redacted copies of the subject materials.  For these reasons, the Court will deny the petition in its entirety.

---

[6] Even if there was a First Amendment right of access to pre-indictment search warrant materials, neither experience nor logic provide a basis for it. *See Sealed Search Warrants*, 1999 WL 1455215, at *4–7.  Alternatively, the Court finds that there are compelling governmental and private interests which override that right.  There is undoubtedly the need to protect the secrecy of grand jury proceedings.  There is the Government's interest in conducting a criminal investigation unfettered by early disclosure to the public, let alone to an individual involved in, or a potential target of, the activity under investigation.  There are also the privacy interests of the individuals identified in the global affidavit, such as victims, cooperating witnesses, or even targets of criminal activity, who could be subject to intimidation and tampering following disclosure. *See Smith I*, 776 F.2d at 1114 ("The individuals on the sealed [bill of particulars] are faced with more than mere embarrassment. . . . In these circumstances, we have no hesitancy in holding that the trial court had a compelling governmental interest in making sure its own process was not utilized to unnecessarily jeopardize the privacy and reputational interests of the named individuals.").  Because the Government has stated that the global affidavit includes details concerning victim and witness interviews, the same threats to individual privacy interests that compelled the Third Circuit to seal the bill of particulars in *Smith I* are also present here. *See In re Cap. Cities/ABC, Inc.'s Appl. for Access to Sealed Trs.*, 913 F.2d 89, 90 n.1 (3d Cir. 1990) (noting the government can assert individual privacy interests in attempting to meet its burden of demonstrating the compelling interest that justifies denial of a First Amendment right of access to records of a criminal proceeding).

### III. CONCLUSION

Accordingly, for all the foregoing reasons,

**IT IS HEREBY ORDERED** this **9th** day of **February**, **2024**, that the Petition to Unseal Search Warrant Materials [ECF No. 1] is **DENIED**; and it is further

**ORDERED** that Petitioner's remaining motions [ECF Nos. 8, 15] are **DENIED** as moot; and it is further

**ORDERED** that the Clerk shall mark this matter as **CLOSED**; and it is further

**ORDERED** that the Clerk shall forward a copy of this Memorandum Opinion and Order to Petitioner *via* regular mail and shall enter a notation on the docket indicating the date upon which this Memorandum Opinion and Order was forwarded to Petitioner *via* regular mail.

                                         s/ Sharon A. King
                                         SHARON A. KING
                                         United States Magistrate Judge

cc:  Hon. Noel L. Hillman, U.S.D.J.